BOARD OF EDUCATION OF LOCKPORT TOWNSHIP HIGH SCHOOL DISTRICT 205 *et al.*, Plaintiffs-Appellants, v. DONALD B. GILL, State Superintendent of Education, *et al.*, Defendants-Appellees.

Third District   Nos. 3—87—0424 through 3—87—0427

Opinion filed July 29, 1988.—Modified on denial of rehearing December 30, 1988.

Block, Krockey, Cernugel & Cowgill, P.C., of Joliet (Joseph M. Cernugel, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Valerie J. Peiler, Assistant Attorney General, of Chicago, Gary D. Kuhar, Assistant Attorney General, of Springfield, and Colleen McLaughlin, Assistant Attorney General, of West Chicago, of counsel), for appellees.

JUSTICE BARRY delivered the opinion of the court:

The Board of Education of Lockport Township High School District 205 and Richland Grade School District 88A brought several different actions seeking a recomputation of the State aid funds apportioned to the school districts based upon a subsequent reduction in the assessed valuations of the taxable property within the school districts. The circuit court of Will County entered summary judgment for the defendants, members of the State Board of Education, in four of those causes, and plaintiffs appeal from those judgments. We have allowed plaintiffs' motion to consolidate those appeals.

Under the Illinois scheme for funding education, school districts submit claims to the Illinois State Board of Education for State aid each year. Under the State aid formula the State guarantees each elementary school district with a tax rate of 1.9% a foundational level of $1,951.94 per student. To the extent the equalized assessed valuation of property in the district is insufficient to generate the foundation level, the State makes up the difference in State aid. The State Board obtains the equalized assessed values from the Department of

Revenue, and because of the two-year tax cycle in Illinois, the values used each year are two years old. For example, the 1983 values were the basis for computation of aid in the 1985-86 school year.

The problem giving rise to this litigation is the fact that after the assessed valuations were supplied to the Department of Revenue by the Will County Board of Review, various property owners appealed to the Property Tax Appeal Board and obtained a reduction in their assessed valuations, which in turn reduced substantially the amount of revenue to the plaintiff districts. The amount of State aid lost for the school years in question by each district was as follows:

| School Year | Richland | Lockport |
|---|---|---|
| 1978-79 | $22,556 | $15,088 |
| 1979-80 | 23,914 | 15,067 |
| 1980-81 | 70,841 | 41,512 |
| 1981-82 | 46,212 | 25,538 |
| 1982-83 | 42,106 | 24,377 |
| 1983-84 | 7,265 | 4,206 |
| 1984-85 | 15,808 | 9,152 |
| 1985-86 | 56,675 | 949 |

Section 2—3.33 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par 2—3.33) provides for the State Board of Education to recompute a State aid claim, under the following circumstances:

"To recompute within 3 years from the final date for filing of a claim any claim for reimbursement to any school district if the claim has been found to be incorrect and to adjust subsequent claims accordingly, and to recompute and adjust any such claims within 6 years from the final date for filing when there has been an adverse court decision affecting the tax revenues of the school district."

Plaintiffs requested a recomputation of the State aid due them for the years in question, but the State Board of Education refused. Plaintiffs also sought administrative review of the Property Tax Appeal Board decisions, but the circuit court of Will County dismissed the administrative review actions on the ground that it lacked subject matter jurisdiction. Plaintiff school districts then sought a declaratory judgment that the State Board of Education was required to recompute the funds due to the plaintiffs under section 2—3.33. In another action plaintiffs sought *mandamus* and declaratory judgment, and in two other suits, plaintiffs sought review of the State Board's administrative decisions denying plaintiffs' requests for recomputation. In granting defendants' motions for summary judgment, the trial court

ruled that the State Board had no legal duty to recompute the State aid due to plaintiff school districts.

There is no dispute as to the facts of this case. The sole issue is one of law: Does section 2—3.33 of the School Code require a recomputation of plaintiffs' claims for State aid based upon modifications in the assessed valuation of taxable property within the districts? This question has two parts: (1) Were the claims of the school districts "incorrect"? (2) Was there an "adverse court decision affecting the tax revenues of the district"? We conclude that the answer to both questions is "Yes" and, therefore, that the judgment of the trial court must be reversed.

■ As the school districts contend, it is obvious that the claims for State aid submitted each year were incorrect because they were based upon property tax valuations that were subsequently determined to have been grossly inflated. By decision of the Property Tax Appeal Board, the valuations as of September 30 of each year (the date on which the valuations were determined) were not correct. The defendants argue that the statute refers only to errors in calculation such as wrong attendance data or errors in arithmetic. The statute is not so limited by its language. Any sort of error in the claim can be and should be the basis for a recomputation in order to provide the intended level of support for a school district. The error here (overassessment of taxable property) was a matter totally beyond the control of the school districts. When one of the factors in the State aid formula is later determined to have been wrong, a recomputation should be made under this statute.

Defendants also say that the assessed valuation figures were correct on the date the figures were submitted so that there was no error at the time the original determination of State aid was made. This argument ignores the fact that the decision of the Property Tax Appeal Board in effect holds that the assessment figures were excessive *at the time of the original assessment* and, therefore, that the figures have been wrong all along. Consequently, the figures were incorrect at the time they were used in the State aid formula. The trial court erred in holding otherwise.

■ Plaintiffs also contend that the dismissal of their complaint for administrative review of the Property Tax Appeal Board decision was an adverse court decision adversely affecting their tax revenues which should have triggered a recomputation under section 2—3.33 of the School Code. Defendants insist that only a court decision deciding the merits of a case adversely to the school districts can be the basis for such a recomputation. Again, nothing in the language of the stat-

ute justifies such a narrow interpretation. The decision of the Property Tax Appeal Board reducing the assessed valuation of the taxable property within plaintiffs' districts caused a decrease in plaintiffs' tax revenues, and the dismissal of the administrative review complaint had the legal effect of affirming that administrative decision. Thus the dismissal order adversely affected plaintiffs' tax revenues to the same extent as the original administrative order. Although defendants argue that such an interpretation would encourage filings of spurious complaints in court in order to trigger this section, we consider that to be a problem which the legislature has already addressed.

For the reasons stated, we reverse the judgment of the circuit court of Will County, and we remand these causes for entry of judgment in favor of plaintiffs upon determination of the correct amount of State aid due for the school years 1978-79 through 1985-86.

Reversed and remanded.

WOMBACHER and HEIPLE, JJ., concur.